**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** :  :  05-CR-456-01 (rwr) | |
| v. : Sentencing 10/23/2006 | |
| : | |
| **RAOUL LAWRENCE** : | |
| : | |

**SENTENCING MEMORANDUM**

Raoul Lawrence, by and through undersigned counsel, respectfully submits the following for the Court's consideration at sentencing in this matter.

1. The primary mandate and overriding principle of 18 U.S.S.C. § 3553(a) is that sentencing courts impose sentences "sufficient, but not greater than necessary" to comply with the four purposes of sentencing. In *United States v. Booker,* 125 S.Ct. 738 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. The other factors set forth in 18 U.S.S.C. § 3555 (a) must also be considered in fashioning the appropriate sentence. *See Booker*, 125 S.Ct. at 790 (sentencing guidelines[1] are but one of many statutory concerns that federal courts must take into account during sentencing determinations). These factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training,

---

[1] Of particular note, Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair severity of federal sentences and the harmful effects that the rigid application of the Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure: "Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal

medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense. *Id*; *Booker*, 125 S.Ct. at 764. Hence, counsel requests this Court's consideration of the following "mitigating factors" instead of "downward departures." *See* Dissent of Justice Stevens in *Booker*, 125 S.Ct. at 788 ("there can be no departure from a mere suggestion."). Because the district court may now consider even those mitigating factors that the advisory guidelines prohibit: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. See *United States v. Ranum*, 353 F.Supp.2d 984 (E.D. Wisc. 2005) ("The guidelines' prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant'); *United States v. Myers*, 353 F.Supp.2d 1026 ((S.D.Iowa, 2005) ("The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range"); *United States v. Jaber,* 362 F.Supp.2d 365 (D. Mass. 2005) ("Booker plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases")' s*ee also* 18 U.S.C. § 3661( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in Booker 125 S.Ct. at 758); *United States v.*

---

Sentencing Guidelines should be revised downward..."

*Hadash*, 408 F.3d 1080, 1083 (8th Cir 2005) ("because the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure."); *United States v. Pacheco-Soto,* 386 F.Supp.2d 1198, 1204 (D.N.M. 2005) ("Because the Guidelines are no longer mandatory, a non-Guideline sentence need not be supported by factors that would have justified a departure under the old, mandatory regime, and a traditional "departure" is no longer necessary in order for the sentencing court to impose a sentence below the Guidelines range"); *id* ("Under the Guidelines, courts traditionally were forbidden to consider the defendant's age..his education and vocational skills...his mental and emotional condition...his physical condition including drug or alcohol dependence...and his family ties and responsibilities... in the wake of *Booker*... these factors are important to consider in fashioning a just sentence.").

2. Counsel also requests that the Court consider also that Congress had directed that the district court "shall impose a sentence *sufficient*, *but not greater than necessary*, to comply with [the purposes of sentencing]" (emphasis added). 18 U.S.C. § 3553(a) (emphasis added). This is the "primary directive" of the sentencing statute. *Ranum*, 353 F.Supp. 2d at 986; *United States v. Pirani,* 406 F.3d 543, 564 (8th Cir. 2005)(Bye, J., dissenting) ("factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence"). Arguably, no special weight is to be given to the advisory guidelines or other factors mentioned in the statute. *See United States v. Okai,* 2005 WL 2042301 (D. Neb. August 22, 2005) ("The Guidelines range is thus one of many factors for the sentencing court to consider, and although the court is not bound by the

guidelines, it must consult them and take them into account when sentencing."); *United States v. Pirani,* 406 F.3d 543, 564 (8th Cir. 2005)(Bye, J., dissenting) ("in addition to consideration of the guideline range the court must give equal consideration to sentencing factors such as just punishment, deterrence, incapacitation, rehabilitation, and the need for the sentence to reflect the nature and circumstances of the offense and the history and characteristics of the defendant"); *United States v. Jaber,* 362 F.Supp.2d 365 (D. Mass. 2005) (advisory does not mean "slavish application of the Guidelines under the guise of fair "consideration"); *United States v. Moreland* 366 F.Supp.2d 416 (S.D.W.Va. 2005)("while I respect the advice of the Guidelines and give it serious consideration, I do not view that advice as carrying greater weight than any of the other § 3553(a) factors"); *United States v. Biheiri*, 356 F.Supp.2d 589 (E.D.Va. 2005) ("no individual factor is singled out as having greater weight; instead, the richness of factual diversity in cases calls on sentencing judges to consider all of the factors and to accord each factor the weight it deserves under the circumstances."); *United States v. Webb*, 403 F.3d 373, 385 n. 9 (6th Cir. 2005) ( "[w]hile we decline to indicate what weight the district courts must give to the appropriate Guidelines range, or any other Section 3553(a) factor, we also decline to hold that a sentence within a proper Guidelines range is per-se reasonable. Such a per-se test ... would effectively re-institute mandatory adherence to the Guidelines.'").

   3. Since February 13, 2006, Mr. Lawrence has been released on his personal recognizance under the supervision of the High Intensity Supervision Program. He has entered into and completed the drug treatment program at the Next Step Program. We would ask the Court to recommend the 500 hour drug treatment program while Mr. Lawrence is incarcerated.

   4. In addition to the three level decrease of the base offense level for Mr. Lawrence's acceptance of responsibility, Mr. Lawrence moves to receive consideration pursuant

4

to the Safety Value Provisions, USSG § 5C1.2, 2D1.1(b)(2) and 18 U.S.C. § 3553(f)(1)-(5). Pursuant to the plea agreement, if these provisions are applicable, the government does not oppose such consideration by this Court. See Plea Agreement, Paragraph 23. Counsel submits that Mr. Mako meets the criteria given that (1) he does not have more than 1 criminal history point, as determined under the sentencing guidelines, See PSR Paragraph 30; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense, See PSR generally; (3) the offense did not result in death or serious bodily injury to any person, See PSR generally; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act, See PSR generally; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. On August 31 2006, Mr. Lawrence provided the government with the names of persons from who he purchased drugs and to whom be sold drugs during the timeframe of the conspiracy as well as more specific information on the quantities of narcotics that he dealt. In addition, he has provided the government with information on how he initially began selling drugs, prior to the charged offense.

     5.     Since the time of the offense in this matter, Mr. Lawrence has served a five year sentence in Maryland. He is currently paroled from that sentence with parole and probation to expire on 11/5/2007. During that sentence, he was housed from March 2004 until November 2004 in a pre-release house in Maryland without incident; he has now been on parole and

probation since November 2004. Counsel requests that the court take this into consideration when determining the appropriate sentence in this case, since it is punishment[2] he has received

---

[2] *See United States v. Pray*, 373 F.3d 358 (3rd Cir. 2004) (where defendant served 4 months state time for drug offense and later convicted on related federal drug offense district court may depart downward on federal sentence to credit defendant with state time--which was completed (and therefore not "undischarged" in accordance with §5G1.3) and where defendant was on state parole at the time federal authorities brought charges which charges were considered relevant conduct to his state charges. District Court could not "credit" defendant in his federal case with the time he served in his state case, in accordance with §5G1.3, but could accomplish the same result through a departure.); *United States v. White*, 354 F.3d 841 (9th Cir. 2004) (where D spent 10 months in state custody until his trial for attempted murder and was acquitted, and then prosecuted in federal court for felon in possession, sentencing remanded for district court to determine whether to depart where district court erroneously believed only BOP could give defendant credit for the 10 months already served because departure authorized under 5G1.3 App. note 7); *Ruggiano v. Reish*, 307 F.3d 121 (3rd Cir. 2002) (district court has authority under U.S.S.G. § 5G1.3 to adjust a federal sentence for time served (14 months) on a state sentence, in a way that is binding on the Bureau of Prisons--whether called a "departure" a "credit" or an "adjustment." While the BOP has the sole authority to grant sentencing credits for time served in detention for the offense for which the defendant is ultimately sentenced, under 5G1.3(c), an adjustment or departure for time served on a preexisting, unrelated state sentence is within the exclusive power of the sentencing court –so BOP ordered to credit defendant with 14 months he served on state sentence—as district court had ordered); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563-64 (9th Cir. 1998) (en banc) (the district court acted within its discretion when it departed downward in an illegal reentry case by 3 levels from 77 to 30 because the delay in bringing the federal charge prejudiced the defendant's opportunity to obtain a sentence concurrent to the state sentence he was already serving); *United States v. Gonzalez*, 192 F.3d 350 (2d Cir. 1999) (although federal court may not order that federal sentence begin when D was arrested by state for same conduct underlying federal offense, because BOP determines credit, federal judge may accomplish same end by departing downward in federal sentence. "The proper way to ensure that Gonzalez served a total of 156 months would have been for the court to increase the downward departure it granted him and sentence him to 129 months."); *United States v. Otto*, 176 F.3d 416, 418 (8th Cir. 1999); *United States v. O'Hagan*, 139 F.3d 641 (8th Cir. 1998) (district judge has authority, under §5K2.0, to make a downward departure from guidelines to take into account an expired state term of imprisonment that was based on conduct "inextricably intertwined" with the federal offense because Commission did not adequately consider the issue. Section 5G1.3 addresses only credit only for "undischarged" terms of imprisonment); *United States v. Blackwell*, 49 F.3d 1232, 1241-42 (7th Cir.1995) (authorizing downward departure to achieve the effect of concurrency with a fully discharged sentence); *U.S. v. Kiefer*, 20 F.3d 874 (8th Cir. 1994) (in ACC case, court can grant downward departure below the 15-year minimum to ensure that D gets credit for time served in state where the gun in the ACC case was used in an underlying state crime. Time runs concurrent from date of the arrest on the state charge); *United States v. Drake*, 49 F.3d 1438 (9th Cir. 1995) (where state robbery had been fully taken into account in determining the offense level for the federal firearms offense (felon in possession), the district court is required to reduce defendant's mandatory minimum sentence for time served in state prison. Notwithstanding Wilson, court can impose guideline provision §5G1.3(b) to reduce sentence in order not to frustrate the concurrent sentencing principles mandated by other statute); *United States v. Rosado*, 254 F.Supp. 2d 316 (SDNY 2003) (where D convicted of distributing heroin, and where D served 7 months in state custody on conviction that was relevant conduct in the federal sentence, D granted 7 month downward departure to account of state time already served).

since the conduct in this case. Likewise, since this is relevant conduct for the conspiracy that he plead guilty to before this court for which he has already been serving time for since August 2001[3], a little over five years. In addition, his conduct over the past five years have shown remarkable rehabilitation since the time of the criminal offense in this matter. Noteably, the PSI indicates that he is "very remorseful" and that being incarcerated has changed his life. We would ask that the Court impose this sentence concurrent with the Maryland sentence he is currently still serving.

6.      Counsel respectfully asks this Court to impose a sentence that complies with 18 U.S.C.§ 3553(a) on the primary basis that the advisory guideline range is not a fair range because of the disparity in sentence between powder and cocaine base in guideline calculations. Mr. Johnson plead guilty to conspiracy to possess with the intent to distribute and distribution of 50 grams or more of cocaine base. As the Court well knows, the sentence called for by the Guidelines is driven largely by the weight of and type of drug. The Guidelines treat the possession of 50 grams of "crack" cocaine the same as they treat possession of 5,000 grams (5 kilograms) of powder cocaine. *See* U.S.S.G. § 2D1.1(c)(4). That is, an offense involving crack is

---

[3] *See United States v. Gregory*, 322 F.3d 1157 (9th Cir. 2003) (where D pled guilty to money laundering and two years later was indicted for drugs crimes related to the money laundering, dismissal of indictment improper, but district court on remand may depart to impose sentence that would have been imposed had both crimes been brought at same time. A departure "may be appropriate to mitigate the effects of any loss of grouping,"); *United States v. Cornielle*, 171 F.3d 748, 754 (2d Cir. 1999) (among other things, four-year preindictment delay in perjury prosecution warranted one-level downward departure); *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 563- 64 (9th Cir. 1998) (en banc) (the district court acted within its discretion when it departed downward in an illegal reentry case (8 U.S.C. §1325) by 3 levels from 77 to 30 in part because the delay in bringing the federal charge prejudiced the defendant's opportunity to obtain a sentence concurrent to the state sentence he was already serving); *United States v. Barrera-Saucedo*, 385 F.3d 533 (5th Cir. 2004) (in illegal reentry case, district court has discretion to depart downward for all or part of time defendant served in state custody from time federal immigration authorities located him); *United States v. O'Hagan*, 139 F.3d 641, 656-58 (8th Cir. 1998) (affirming downward departure for delay in prosecution); *United States v. Saldana*, 109 F.3d 100, 104 (1st Cir.1997) (departure appropriate for preindictment delay, even if unintentional, if it produces an unfair or unusual sentencing result).

sentenced 100 times more harshly than an offense involving the same amount of powder (100-to-1 ratio).

The Court is required to consider relevant policy statements of the Sentencing Commission. 18 U.S.C. § 3553(a)(5). Although not technically policy statements within the meaning of the Guidelines, the Commission has issued a number of reports in which it had concluded that the 100-to-1 ratio is much too high. *See generally* U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (Feb. 1995), *available at* http://www.ussc.gov/crack/exec.htm; U.S. Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 5 (April 1997), *available at* http://www.ussc.gov/r_congress/NEWCRACK.PDF; U.S. Sentencing Commission, *Report to the Congress: Cocaine and Federal Sentencing Policy* (May2002) (hereafter "2002 Report"), *available at* http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm; U.S. Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Federal Sentencing Reform* (Nov. 2004) (hereafter "Fifteen Year Report"), *available at* http://www.ussc.gov/15_year/15year.htm.  More specifically, inits2002 Report, the Commission reported in part the following findings:(1) the current penalties exaggerate the relative harmfulness of crack cocaine; (2) the current penalties sweep too broadly and apply most often to lower level offenders; (3) the current penalties overstate the seriousness of most crack cocaine offenses and fail to provide adequate proportionality; and (4) the current penalties' severity mostly impacts minorities. Based upon its findings, the Commission unanimously and firmly concluded "that the various congressional objectives can be achieved more effectively by decreasing substantially the 100-to-1 drug

quantity ratio." 2002 Report at v-viii. The Commission's consistent conclusion over the past ten years has been that crack is punished too harshly relative to powder.

The Court should give great weight to the Commission's views on this issue, as have other district courts. *See United States v. Harris*, 2005 U.S. Dist. LEXIS 3958 (D.D.C. Mar. 7, 2005) (Robertson, J.) (finding that Sentencing Commission's findings "are sound authority for the proposition that the sentencing ranges for [the defendants'] crime by the Guidelines are greater than necessary"); *see also United States v. Smith*, ___ F. Supp. 2d ____, 2005 WL 549057 (E.D. Wis.Mar. 3, 2005) (Adelman, J.); *United States v. Thomas*, ___ F. Supp. 2d ____, 2005 WL 602971 (D. Mass. Mar. 14, 2005) (Ponsor, J.); *Simon v. United States*, 2005 U.S. Dist. LEXIS 4551 (S.D.N.Y. Mar. 17, 2005) (Sifton, J.). The Court is required to avoid unwarranted disparities in imposing a sentence. 18 U.S.C. § 3553(a)(6). It is also required to impose a sentence that will promote respect for the law. *Id.* § 3553(a)(2)(A). To apply the 100-to-1 ratio undermines these requirements in several ways.

First, it creates racial disparity. Crack sentences are imposed disproportionately on minorities, including African- Americans. *See, e.g.*, U.S. Sentencing Commission, *2002 Sourcebook of Federal Sentencing Statistics*, Table 34, Race of Drug Offenses for Each Drug Type (81.4% of persons sentenced for crack offenses are black, whereas only 30.9% of persons sentenced for powder offenses are black), http://www.ussc.gov/ANNRPT/2002/SBTOC02.htm; *see also* 2002 Report at 102-03. But Congress has instructed "that the guidelines and policy statements are [to be] entirely neutral as to the race . . . of offenders." 28 U.S.C. § 994(d). Even though the Guidelines are not designed deliberately to sentence minorities more harshly, the fact remains that in practice they do. Further, as the Sentencing Commission has concluded, "even the perception of racial disparity . . . is problematic. Perceived improper racial disparity fosters

disrespect for and lack of confidence in the criminal justice system among those very groups that Congress intended would benefit from the heightened penalties for crack cocaine." 2002 Report at 103; *see also* Fifteen Year Report at 113, 115, 117, 132.

Second, applying the 100-to-1 ratio creates unwarranted jurisdictional disparity. Both powder cocaine and crack cocaine are, as they are in the federal system, Schedule II controlled substances under District of Columbia law but unlike in the federal system, however, the District of Columbia, for sentencing purposes, treats crack and powder the same. This fact creates unwarranted sentencing disparities, as two individuals committing the same offense will receive dissimilar sentences depending upon the fortuity of whether the federal[4] government exercises jurisdiction. *See* 2002 Report at 81 (stating that "[b]ecause the states generally have not adopted the federal structure for cocaine offenses, the decision whether to prosecute a crack cocaine offense at the federal or state level can have an especially significant effect for a crack cocaine offender").

Third, applying the 100-to-1 ratio will create disparity and disrespect for the law when the bases upon which the ratio is predicated have been disproved. For example, while crack is more addictive than cocaine, it is so because of the way it is consumed. When powder is injected,

---

[4] *See United States v. Wilkerson*, 411 F.3d 1 (1st Cir. 2005) (where district judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account...," case remanded for resentencing in part because under *Booker*, "the need to avoid unwarranted sentencing disparities" is among the factors to be considered by the now advisory Guidelines); *United States v. Bariek* 2005 WL 2334682, *6 (E.D.Va.,2005)(where defendant convicted of operating unlicensed money trading business—sending money abroad to Afghanistan, in violation of 18 U.S.C. Section 1960, guidelines range of 37-46 greater than necessary given that conviction based solely on his failure to obtain a state license, an offense for which he would face a misdemeanor conviction and a maximum sentence of one year of imprisonment in state court—so 18 months imposed); *United States v. Moreland*, 366 F. Supp. 2d 416, 423 n.2 (2005) (where defendant career offender with two prior drug convictions, judge gives non guideline sentence 10 years for selling six grams of crack for $450 to an undercover state police officer noting that the case was "a perfect example of the vast disparities that can exist between the state and

it "puts the user at a similar risk of addiction as smoking cocaine, but only 2.8 percent of powder cocaine users inject the drug." 2002 Report at 93-94. Still, the Sentencing Commission has concluded that "[t]he addictive nature of crack cocaine . . . independently does not appear to warrant the 100-to-1 drug quantity ratio." *Id*. at 94. Another justification for harsher penalties, that a "crack baby" will suffer more harm than a baby whose mother ingests powder, appears now to have no scientific validity. As the Commission observed, "[R]ecent research reports no difference between the negative effects from prenatal crack cocaine and powder cocaine exposure, no differential in the drug quantity ratio based directly on this particular heightened harms appears warranted." *Id*. at 94. Finally, "[a]n important basis for establishment of the 100-to-1 drug quantity ratio was the belief that crack cocaine trafficking was highly associated with violence generally." *Id*. at 100. However, "[m]ore recent data indicate that *significantly less* trafficking-related violence or systemic violence, as measured by weapon use . . . is associated with crack cocaine trafficking offenses than previously assumed." *Id.* (emphasis added). In fact, in 2000, "*three-quarters* of crack cocaine trafficking offenders (74.5%) had *no personal weapon involvement*." *Id.* (emphasis in original).

Fourth, applying the 100-to-1 ratio does not promote respect for the law when it does not mesh with public perception of the seriousness of the offense. As the Sentencing Commission found when it commissioned a survey ten years ago, "perhaps the most important finding [in regard to drug offenses] is that the general public does not make important distinctions between trafficking in heroin, powder cocaine and crack cocaine . . . ." U.S. Sentencing Commission, *Public Opinion on Sentencing Federal Crimes* at 86 (Oct. 1995), *available at* http://www.ussc.gov/nss/jp_exsum.htm; *see United States v. Wilson*, 350 F. Supp.2d 910, 918

---

federal criminal justice systems") *United States v. Biheiri,* 356 F.Supp.2d 589 (E.D.Va.2005) (noting "the

(D. Utah2005) (whereas for the most part public opinion converges with Guidelines sentences, "[i]t is important to note a few areas of disagreement between the public's views and Guidelines sentences[;]"and in particular, "'[t]he public failed to support the Guidelines' differentially harsh treatment of distribution of crack cocaine (as compared to powder cocaine)") (citing to book published by the two researchers who conducted survey for Sentencing Commission).

Fifth, in dropping below a federal sentencing guideline range for crack in the case of *United States v. Mulvey*, No 03-10075-001 (C.D. Ill. Feb. 11, 2005), U.S. District Judge McDade made the common sense observation that, "[g]iven the Draconian punishment associated with crack cocaine, to follow the guideline range for this case would go beyond what is needed to serve the purpose of sentencing . . . . Respect for the law doesn't always mean sending people to prison for as long as you can." Elaine Hopkins, *McDade Sentencing Below Guidelines: Judge Says This Crack Cocaine Case Merited a Discretionary Approach*, Peoria Journal Star, Feb. 12, 2005, *available at* http://www.pjstar.com/stories/021205/TRI_B5IGJJSI.012.shtml

7. Counsel submits the following letter from Mr. Lawrence's mother. See Exhibit 1. He has two children, Martique (13) and Marquise (8), who he provides for and spends time with.

8. Finally, counsel and Mr. Lawrence respectfully request that this Court allow Mr. Lawrence to self surrender to the facility designated by the Bureau of Prisons for his sentence. Over five years have elapsed since his criminal activity in this case. He has complied with supervision both by Maryland authorities (since November 2004) and now DC Pretrial Services Agency (since February 2006).

Respectfully submitted,

---

obvious and well-publicized disparities in sentences imposed in the federal and state systems").

>          /s/
> JENIFER WICKS
> DC Bar # 465476
>
> The Law Offices of Jenifer Wicks
> The Webster Building
> 503 D Street NW Suite 250A
> Washington, DC 20001
> (202) 326-7100
> Facsimile (202) 478-0867

EXHIBIT 1 – Letter from Barbara Wood

September, 2006

Judge Roberts,

My name is Barbara W[ood]. I'm writing this letter asking for leniency for my son Ronald Lawrence, since he's come home he has acquired a job and is trying to help with his son. I don't want my son to go back to jail and leave his children again because they're getting older and so many young children are without their fathers. I tried to raise my son to be a good person, this hurts my heart to see so many young men in prison, I feel guilty about my son because I brought him into this world and I couldn't keep him from going to jail. I have been in court rooms and heard judges talk down about mothers begging for their sons, I will beg + beg and pray for my son because prison is not where he belongs, there is no hope there for most of the men imprisoned, they are killing each other and raping men we have men leaving jails with HIV aids. Sir I can never pay you but I do believe that this laws saved Ronald and myself.

Thank you for reading this letter

Barbara W[ood]