EXHIBIT 1

*United States v. Cherry*, 366 F. Supp. 2d 372 (D. VA 2005)

UNITED STATES OF AMERICA v. JAMIE CHERIE CHERRY, Defendant.

CRIMINAL ACTION NO. 2:04cr104

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION

366 F. Supp. 2d 372; 2005 U.S. Dist. LEXIS 7732

**April 25, 2005, Decided**

**COUNSEL:** [**1] For Jamie Cherie Cherry (3), Defendant: Sterling Harrisbe Weaver, Sr., Portsmouth, VA.

For USA, Plaintiff: Laura Marie Everhart, United States Attorney's Office, Norfolk, VA.

**JUDGES:** RAYMOND A. JACKSON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RAYMOND A. JACKSON

**OPINION:**

[*373] ***MEMORANDUM OPINION & ORDER***

Before this Court is the Defendant, Jamie Cherie Cherry, for sentencing. The Court has considered the presentence report, and neither Defendant nor the Government has voiced any objections to the report. For the reasons set forth below, Defendant is sentenced according to the terms pronounced by the Court in its accompanying judgment order.

**I. FACTS AND PROCEDURAL HISTORY**

On February 13, 2004, at approximately 8:10 p.m., Defendant drove Francis Lamont Wilson ("Wilson") to a Food Lion grocery store in Virginia Beach, Virginia. Wilson intended to meet Andre Butler ("Butler") for the purpose of selling Butler 2.36 kilograms of cocaine. However, Butler had been arrested by the Virginia Beach Police, and was operating under the direction and supervision of the police. Wilson instructed Defendant to drive to an apartment complex behind the Food Lion, at which time Wilson got out, leaving [**2] the cocaine in the car, so he could meet Butler at the store. Wilson talked to Defendant by telephone after leaving the car, and instructed her to keep moving the car around the parking lot. The police then arrested both Wilson and Defendant, and found the cocaine on the floor board of Defendant's car.

Defendant had met Wilson at a club three months prior to their arrest. On the day of their arrest, Defendant met Wilson at approximately 4:00 p.m., and accompanied him to a house where she watched television while he prepared the cocaine for sale to Butler. Wilson admitted that the cocaine belonged solely to him. Defendant admitted that she knew she was driving Wilson to a drug deal, and that she had seen him place the cocaine in the car. However, this was the first and only time she had done so.

On July 15, 2004, Defendant pled guilty to Count One of an indictment, which charged Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, Schedule II Narcotic Controlled Substances, in violation of *21 U.S.C. § § 841(a)(1)* and *(b)(1)(A)(ii)-(iii)*.

**II. DISCUSSION**

[**3] **A. The Advisory Guideline Sentence**

In the statement of facts that Defendant signed, the Defendant and the United [*374] States attributed Defendant with 2.36 kilograms of cocaine. The Court held a hearing on February 8, 2005, to determine the advisory sentencing guideline range under the United States Sentencing Guidelines. The base offense level for conspiracy to distribute and possess with intent to distribute 2.36 kilograms of cocaine is 28, but Defendant has been granted a two point deduction for meeting the criteria set forth in *U.S.S.G. § 5C1.2*, a three point deduction for Acceptance of Responsibility, and a four point deduction for her minimal role in the offense. Therefore, Defendant's total offense level is 19. Defendant has no criminal history points and her Criminal History Category is I. The Defendant's advisory guideline sentencing range is 30-37 months

The statutory minimum penalty for conspiracy to distribute and possess with intent to distribute 2.36

Case 1:05-cr-00456-RWR   Document 37-2   Filed 10/28/2006   Page 3 of 6

Page 2
366 F. Supp. 2d 372, *; 2005 U.S. Dist. LEXIS 7732, **

kilograms of cocaine is five years imprisonment pursuant to *21 U.S.C. § 841(b)(1)(B)*. However, Defendant qualifies to be sentenced below the statutory minimum pursuant [**4] to the safety valve provisions of *18 U.S.C. § 3553(f)*.

**B.** *Booker* **and the Safety Valve Provision**

On January 12, 2005, the United States Supreme Court ("Supreme Court") issued its opinion in *United States v. Booker, 160 L. Ed. 2d 621, 125 S.Ct. 738 (2005)* holding that the mandatory nature of the guidelines made them incompatible with the *Sixth Amendment* as discussed in *Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S.Ct. 2531 (2004)*. The Supreme Court relied upon its ruling in *Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000)*, in which the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi, 530 U.S. at 490*. The only facts that may be used by a judge in imposing a sentence are those that are *"reflected in the jury verdict or admitted by the defendant." Booker, 125 S.Ct. at 749* (quoting *Blakely, 124 S.Ct. at 2537*)(emphasis in original).

In setting forth the remedy, the Supreme Court severed and excised two portions [**5] of the *Sentencing Reform Act* ("SRA"). The first was *18 U.S.C. § 3553(b)(1)*, which required the sentencing courts to impose a sentence within the applicable guideline ranges. *Booker, 125 S.Ct. at 764*. The second was *18 U.S.C. § 3742(e)*, which required *de novo* review of the sentence on appeal. *Id.* The Supreme Court then stated in dicta that "the remainder of the Act satisfies the Court's constitutional requirements." *Id.* However, the Supreme Court was not confronted with a question as to the validity of the "safety valve" provision, *18 U.S.C. 3553(f)*.

The safety valve provision provides that:

> notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act *(21 U.S.C. 841, 844, 846)* . . ., the court shall impose a sentence pursuant to the guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing . . ., that --
>
> (1) the defendant does not have more than 1 criminal history point, as determined under [**6] the guidelines;
>
> (2) the defendant did not use violence or other credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> [*375] (4) the defendant was not an organizer, leader, manager, or supervisor of other in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise . . .; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

*18 U.S.C. § 3553(f)*. The question before the Court is whether the safety valve provision mandates a sentence within the guideline range.

One federal district court has addressed this question. *See United States v. Duran, 2005 U.S. Dist. LEXIS 1287, No. 2:04-CR-00396PGC, 2005 WL 234778 (D. Utah Jan. 31, 2005)*. n1 In *Duran,* the Government argued that the guidelines remained mandatory when a sentencing [**7] court applies the statutory provisions of *18 U.S.C. § 3553(f)*.

---

n1 The United States Courts of Appeals for the First and Second Circuits have noted this question, but declined to comment upon it. *United States v. Antonakopoulos, 399 F.3d 68, 76 n.6 (1st Cir. 2005)*; *United States v. Crosby, 397 F.3d 103, 110 n.8 (2d Cir. 2005)*.

---

One of the *Duran* court's findings was that the language of the safety valve provision does not require the mandatory imposition of a guideline sentence. *Duran, 2005 U.S. Dist. LEXIS 1287, 2005 WL 234778, at *2*. The provision requires the court to "impose a sentence *pursuant* to the guidelines." *18 U.S.C. 3553(f)* (emphasis added). The *Duran* court interpreted this to mean that "so long as the court consults the Guidelines in determining an appropriate sentence, any resulting sentence is 'pursuant to' the Guidelines." *Duran, 2005 U.S. Dist. LEXIS 1287, 2005 WL 234778, at *2*.

Case 1:05-cr-00456-RWR   Document 37-2   Filed 10/28/2006   Page 4 of 6

Page 3

366 F. Supp. 2d 372, *; 2005 U.S. Dist. LEXIS 7732, **

Therefore, the *Duran* court argued, the guideline [**8] range is only advisory under the safety valve provision. This Court finds that this interpretation has some merit, especially when compared to the language of the provision struck by the Supreme Court in *Booker*. The statutory provision requiring courts to sentence under the guidelines stated that "the court shall impose a sentence *of the kind, and within the range,* referred to in [*18 U.S.C. § 3553](a)(4)." 18 U.S.C. § 3553(b)(1)* (emphasis added). Congress clearly knew how to specifically instruct the courts in regards to imposing a sentence that was to be within the guideline ranges. The fact that Congress chose different language in the safety valve provision allows the courts to question whether Congress's intent was different.

However, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated in an unpublished, pre-Booker opinion that the safety valve provision "permits a sentence within the sentencing guideline range when the range is lower than the statutory minimum, but does not suggest that the guideline range should be determined in any manner that is different from the normal operation [**9] of the sentencing guidelines." *United States v. Leslie, 46 Fed.Appx. 699, 700 (4th Cir. 2002)*. n2 Additionally, such a reading would have permitted courts sentencing under *§ 3553(f)* to consider the guidelines advisory and impose sentences accordingly prior to the Supreme Court's ruling in *Booker.* The Court does not agree with the *Duran* court's reading of "pursuant to" as giving courts the authority to take the guidelines simply under advisement. If the statutory [*376] language was the sole basis for questioning the mandatory nature of the guidelines in *§ 3553(f)*, this Court would find that it was required to apply the guidelines. However, *Booker* requires that the Court give further scrutiny to the safety valve provision.

n2 Although unpublished opinions carry no weight as precedent in the Fourth Circuit, such opinions may provide "helpful guidance" in situations where relevant precedent is lacking. *In re Serra Builders, Inc., 970 F.2d 1309, 1311 (4th Cir. 1992)*.

The second [**10] ground the *Duran* court advanced was that it was impermissible for courts to apply the safety valve provision as "some kind of *Sixth Amendment* alchemy and transform unconstitutionally binding guidelines into constitutionally binding guidelines." *Duran, 2005 U.S. Dist. LEXIS 1287, 2005 WL 234778, at *2*. This Court agrees. When the SRA creates a situation where the Court may be required to engage in judicial fact-finding by a preponderance standard to impose a sentence beyond the statutory maximum, the Act is unconstitutional. *See Booker, 125 S.Ct. at 749-50*. It makes no difference that the Defendant has admitted all the relevant conduct in this case. The *Booker* Court specifically rejected a remedial approach that would distinguish between instances where the court had to engage in judicial fact-finding and instances where the court did not. *Id. at 768*. The mandatory application of the guidelines pursuant to the safety valve provision creates the same constitutional problems that the Supreme Court addressed in *Booker.*

The Court also declines to accept the argument that the Supreme Court has already stated that the rest of the SRA is constitutional, [**11] including *§ 3553(f)*. As noted above, the Supreme Court was not faced with a question regarding *§ 3553(f)*, and the statement in the remedial opinion as to the constitutionality of the remainder of the SRA was purely dictum. *See Booker, 125 S.Ct. at 764*. It is clear that this sort of mandatory application of the guidelines is unconstitutional under the first part of the *Booker* opinion.

The question before the Court is how to remedy this constitutional problem. One possible solution is for the Court to follow the *Booker* Court's lead and simply strike the safety valve provision as unconstitutional. However, if possible, courts should adopt a construction of a statute as to avoid an unconstitutional reading. *United States v. Grace, 461 U.S. 171, 175-76, 75 L. Ed. 2d 736, 103 S. Ct. 1702 (1983)*. Given the "pursuant to [the] guidelines" language of *§ 3553(f)*, and the Fourth Circuit's admonition in *Leslie* that nothing in this language or elsewhere in *§ 3553(f)* suggests "that the guideline range should be determined in any manner that is different from the normal operation of the sentencing guidelines," this Court finds that the guideline range determined under *18 U.S.C. § 3553 (f)* [**12] should be advisory only, and considered along with the other factors of *§ 3553(a)*. Both the Government and the Defendant have stated that they concur with the Court.

### C. Consideration of the Sentencing Factors Under *18 U.S.C. 3553(a)*.

The Government does not dispute that Defendant qualifies under the safety valve provisions of *18 U.S.C. § 3553(f)*. Defendant has no criminal history points. Defendant did not use any violence, threats of violence, a firearm, or any other dangerous weapon, nor did she encourage anyone else to do so. The offense did not result in death or serious bodily injury to any person. Defendant had only a minimal role in the offense. And Defendant truthfully provided all information and evidence regarding the offence prior to her sentencing hearing. Therefore, the Court finds that Defendant should

Case 1:05-cr-00456-RWR   Document 37-2   Filed 10/28/2006   Page 5 of 6

Page 4
366 F. Supp. 2d 372, *; 2005 U.S. Dist. LEXIS 7732, **

be sentenced pursuant to *18 U.S.C. § 3553(f)*, and may receive a sentence lower than the five year statutory minimum.

[*377] The guidelines are just one factor courts must consider when fashioning a sentence. *Booker, 125 S.Ct. at 764*. In general, the SRA instructs that courts [**13]

> shall impose a sentence sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed --
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*18 U.S.C. §§ 3553(a), (a)(2)*. In fashioning a particular sentence, a court should consider not only the above, but also (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the kinds of sentences available, (4) the advisory guideline range, (5) any policy statement of the Sentencing Commission relevant to the offense, (6) the goal of avoiding "unwarranted sentence disparities," and (7) restitution to any victims. *18 U.S.C. § 3553(a)*.

First, the record in regards to this offense reflects that this Defendant, on a single occasion, drove an [**14] acquaintance to the site of a drug transaction. There is no evidence that Defendant had prior involvement with any drugs, with Wilson's drug enterprise, or that she was to be a participant in the instant drug transaction or recipient of any of the proceeds from the transaction. In short, Defendant aided Wilson in commission of a narcotics offense. This is the offense conduct which brings her before the Court.

Second, this Defendant is an educated, intelligent individual, who is well-adjusted in her community. At the age of 25, she has worked consistently, including employment as a master control officer at the Hampton Roads regional jail and a collections account manager with Bank of America. The presentence report reflects no prior juvenile record, and no adult criminal convictions before the instant offense, not even a traffic ticket. Defendant has a supportive family, a solid work ethic, and strong ties to her community. The Court notes that numerous letters from her supervisors, her family, her minister, and her state representative are attached to the presentence report. The letters all reflect that this offense was an instance of poor judgment and aberrational behavior.

Third, [**15] the presentence report and all the information the Court has been able to assemble establishes that the Defendant is not one who requires a heavy sentence to promote a respect for the law, to deter her from further criminal conduct, or to protect the public from further criminal activity on her part. Defendant is not in need of any kind of educational or vocational training that she would receive as part of a term of incarceration.

Fourth, in regards to the kinds of sentences available, the Court notes that in sentencing the Defendant, the Court may not impose a sentence of probation or a suspended sentence. *21 U.S.C. § 841(b)(1)(B)*. This holds true even in the application of the safety valve provision. The "notwithstanding any other provision of law" language of *§ 841(b)(1)(B)* trumps the same language in *§ 3553(f)*. *United States v. Dickerson, 381 F.3d 251, 259-60 (3d Cir. 2004)*; *United States v. Green, 105 F.3d 1321, 1324 (9th Cir. 1997)*(citing three cases with a similar holding in regards to *§ 3553(e)*, *United* [*378] *States v. Belt, 89 F.3d 710 (10th Cir. 1996)*; *United States v. Roth, 32 F.3d 437 (9th Cir. 1994)*; [**16] *United States v. Snelling, 961 F.2d 93 (6th Cir. 1991)*).

Fifth, the Court finds that Defendant's advisory guideline sentencing range is 30-37 months. However, the Court believes that this sentence is greater than is necessary to comply with the sentencing factors set forth in *§ 3553(a)*. The Court finds that in calculating the advisory guideline sentence, the guidelines reject the consideration of many of the critical factors described above that the Court is required to consider pursuant to *§ 3553(a)*. See *United States v. Ranum, 353 F.Supp.2d 984, 986-87 (E.D. Wis. 2005)*. As the *Ranum* Court explains:

> For example, under *§ 3553(a)(1)* a sentencing court must consider the

366 F. Supp. 2d 372, *; 2005 U.S. Dist. LEXIS 7732, **

"history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, *U.S.S.G. § 5H1.1*, his education and vocational skills, *§ 5H1.2*, his mental and emotional condition, *§ 5H1.3*, his physical condition including drug or alcohol dependence, *§ 5H1.4*, his employment record, *§ 5H1.5*, his family ties and responsibilities, *§ 5H1.6*, his socio-economic status, *§ 5H1.10*, his [**17] civic and military contributions, *§ 5H1.11*, and his lack of guidance as a youth, *§ 5H1.12*. The guidelines' prohibition of considering these factors cannot be squared with the *§ 3553(a)(1)* requirement that the court evaluate the "history and characteristics" of the defendant. The only aspect of a defendant's history that the guidelines permit courts to consider is criminal history. Thus, in cases in which a defendant's history and character are positive, consideration of all of the *§ 3553(a)* factors might call for a sentence outside the guideline range.

Further, *§ 3553(a)(2)(D)* requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment or medical care in the most effective manner. This directive might conflict with the guidelines, which in most cases offer only prison. See *U.S.S.G. § 5C1.1* (describing limited circumstances in which court can impose sentence other than imprisonment). In some cases, a defendant's educational, treatment or medical needs may be better served by a sentence which permits the offender to remain in the community.

In addition, *§ 3553(a)(7)* directs courts to consider "the [**18] need to provide restitution to any victims of the offense." In many cases, imposing a sentence of no or only a short period of imprisonment will best accomplish this goal by allowing the defendant to work and pay back the victim. The guidelines do not account for this. In fact, the mandatory guideline regime forbid departures to facilitate restitution.

Finally, in some cases the guidelines will clash with *§ 3553(a)*'s primary directive: to "impose a sentence sufficient, but not greater than necessary to comply with the purposes" of sentencing.

*Ranum, 353 F.Supp.2d at 986* (citations omitted). It is clear that this Court cannot simply impose the sentence recommended by the advisory guideline range without offending the remainder of the statutory requirements of *§ 3553(a)*. The Court must seriously consult the guidelines, and then give the recommended sentence its appropriate weight in the balance of factors before the Court. Given the lack of consideration the guidelines give to the remaining factors of *§ 3553(a)*, the Court finds that the advisory guideline range of 30-37 months is harsher than necessary to impose an appropriate sentence upon Defendant. [*379] Therefore, [**19] the Court sentences Defendant as specified in the Court's judgment order.

Finally, in imposing this sentence, the Court finds that this sentence is not disproportionate to what offenders with similar backgrounds and offense conduct receive. In the Court's experience, the Government has frequently charged Defendants who have engaged in similar conduct with Misprison of a Felony, an offense which carries a much less severe penalty than the charge with which the Government has chosen to proceed in this case.

### III. CONCLUSION

For the foregoing reasons, the Court imposes a sentence upon Defendant in accordance with the terms pronounced in the accompanying judgment order.

The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to Defendant and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**

/s/ RAYMOND A. JACKSON

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 25, 2005